**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| SALVATORE CIMINO and | ) | |
| JOSEPHINE CIMINO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-389-TS |
| | ) | |
| FLEETWOOD ENTERPRISES, INC., | ) | |
| FLEETWOOD MOTOR HOMES OF | ) | |
| INDIANA, INC., and FREIGHTLINER | ) | |
| CUSTOM CHASSIS CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION & ORDER**

This matter is before the Court on Defendant Freightliner Custom Chassis Corporation's

Motion for Summary Judgment [DE 60] and Motion to Strike [DE 69], as well as Defendants

Fleetwood Enterprises, Inc. and Fleetwood Motor Homes of Indiana, Inc.'s Motion for Summary

Judgment [DE 63] and Motion to Bar Evidence [DE 73]. The briefing on these motions has

concluded, and the motions are ripe for ruling.

**PROCEDURAL BACKGROUND**

On August 3, 2005, the Plaintiffs filed a complaint in the Circuit Court for Broward

County, Florida, suing Defendant Fleetwood Enterprises, Inc. ("Fleetwood Enterprises") for

replacement of the motor home they purchased from Fleetwood Enterprises or for repayment of

the purchase price less reasonable wear and tear pursuant to the Magnuson-Moss Warranty Act

("MMWA"), 15 U.S.C. §§ 2302, 2310. Fleetwood Enterprises removed the case to federal court

in the Southern District of Florida on September 13, 2005, asserting that subject-matter

jurisdiction existed under 15 U.S.C. § 2310(d)(1)(B). On October 18, 2005, Defendant

Fleetwood Motor Homes of Indiana, Inc. ("Fleetwood Motor Homes")[1] was added and venue was transferred to this Court.

Fleetwood Motor Homes answered the complaint on January 5, 2006. On that same date, Fleetwood Enterprises moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because they contended that they were not a "warrantor" under the MMWA. The Plaintiffs responded to Fleetwood Enterprises' motion to dismiss on January 17, 2006, and argued that Fleetwood Enterprises is a proper party as a parent company and that the motion to dismiss raised a defense to the claim instead of a basis for dismissal. On February 3, 2006, the Plaintiffs filed responses to Fleetwood Motor Homes' affirmative defenses.

On May 15, 2006, the Plaintiffs moved to amend their complaint to add a count against Freightliner, LLC. The Court granted the motion on May 16, 2006. On July 7, 2006, the Court ordered the parties to further brief and submit evidence with regard to the Court's exercise of subject-matter jurisdiction, as no party had alleged the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the Plaintiff received from the vehicle. On September 7, 2006, Freightliner, LLC answered the amended complaint. On September 28, 2006, the Plaintiffs filed a second motion to amend their complaint to reflect that Freightliner, LLC was actually Freightliner Custom Chassis Corporation ("Freightliner"). The Court granted the motion the same day. Also on that date, the Plaintiffs responded to Freightliner's affirmative defenses. Freightliner answered the second amended complaint on October 25, 2006.

Because Fleetwood Enterprises' motion to dismiss had not been refiled or renewed since

---

[1]  The parties refer to Fleetwood Enterprises and Fleetwood Motor Homes interchangeably as "Fleetwood." When this opinion refers merely to "Fleetwood," it is referring to both Fleetwood entities.

the Plaintiffs filed an amended complaint, the Court denied the motion to dismiss as moot on May 29, 2007.

Freightliner filed a motion for summary judgment on June 1, 2007, arguing that because the Plaintiffs are unable to determine the existence of or cause of the alleged problems with their motor home, they cannot establish that they have been damaged and that Freightliner breached its express warranty. Fleetwood Enterprises and Fleetwood Motor Homes also filed a motion for summary judgment on June 1, 2007, arguing that the Plaintiffs have not established that the alleged defects are caused by the failure of a Fleetwood Enterprises or Fleetwood Motor Homes warranted part, that Fleetwood Enterprises or Fleetwood Motor Homes failed to repair the alleged defective part, or that the Plaintiffs have sustained any damages resulting from any breach of warranty by Fleetwood Enterprises or Fleetwood Motor Homes.

The Plaintiffs responded to both motions for summary judgment in a single memorandum on July 2, 2007. Freightliner moved to strike Plaintiffs' Exhibit 7 on July 17, 2007, and it replied to the Plaintiffs' response to its motion for summary judgment on July 18, 2007. Fleetwood Enterprises and Fleetwood Motor Homes replied to the Plaintiffs' response to their motion for summary judgment on July 17, 2007. On July 23, 2007, Fleetwood Enterprises and Fleetwood Motor Homes moved to strike a driver's report and a statement from an unnamed Freightliner technician submitted by the Plaintiffs. The Plaintiffs responded to Freightliner's motion to strike on August 1, 2007, and Fleetwood Enterprises and Fleetwood Motor Homes' motion to strike on August 7, 2007. Freightliner replied on August 8, 2007.

On November 20, 2007, the Court held a telephone conference with the parties and set a date for a ruling conference. On January 25, 2008, the Court conferenced with the parties to correct a clerical error on the docket terminating Fleetwood Enterprises, Inc., and to alert the

3

parties to the fact that the Court could not rule on the motions for summary judgment until Fleetwood Enterprises and Fleetwood Motor Homes filed an answer to the amended complaint. Fleetwood Enterprises and Fleetwood Motor Homes answered the second amended complaint on January 28, 2008.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that

there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000).

A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the Court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). The Court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). The Court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).


## FACTS

Construing all facts in a light most favorable to the Plaintiffs, and drawing all legitimate inferences in favor of the Plaintiffs, the following facts are assumed true for the purposes of summary judgment.

### A.    Motor Home Purchase

The Plaintiffs in this case are motor home enthusiasts. They have owned a total of five

motor homes between 1974 and the initiation of this suit, three of which have been American

Eagle Coaches assembled by Fleetwood Enterprises or their subsidiaries.[2] The newest of these

three American Eagle Coaches, a 2004 model, is the subject of this lawsuit. Fleetwood Motor

Homes, a subsidiary of Fleetwood Enterprises, was the final stage manufacturer of the 2004

American Eagle Coach that is in dispute. Fleetwood Motor Homes manufactured and assembled

the motor home in Indiana, and it incorporated a chassis that was assembled by Freightliner.

Freightliner had no involvement in the manufacturer or assembly of the motor home beyond

supplying the chassis and chassis battery. The Plaintiffs purchased the motor home on July 7,

2004,[3] from Tom Johnson Camping Center in North Carolina for $382,713.

Shortly after purchasing the motor home, the Plaintiffs began experiencing several

problems. The Plaintiffs summarize these malfunctions as follows.

> Post-purchase, the Plaintiff[s] had serious problems with the electrical system and
> also experienced heavy vibrations throughout the motor home. The electrical system
> problem(s) manifested itself by the batteries discharging or the batteries not being
> properly charged. When the batteries discharged or would not maintain a charge, the
> motor home failed to start. The vibration problems throughout the motor home were
> most prominently felt in the steering column in the front seat and towards the mid-
> section of the motor home.

(Pls. Mem. in Opp'n to Summ. J. 2, DE 66.)

**B.     MOTOR HOME WARRANTIES**

The Plaintiffs' motor home is covered by two warranties that are relevant to this case.

The first is the "Limited One-Year/Three Year Warranty For Motor Homes Manufactured and

---

[2]  The other two were a 39-foot-long 1996 Holiday Rambler Endeavor and a used motor home that
Salvatore Cimino purchased in 1974 and that the parties do not further describe. (Salvatore Cimino Dep. 12–13.)

[3]  The Plaintiffs' second amended complaint alleges that they purchased the motor home on July 8, 2004.
(Second Am. Compl. 2, DE 45.) The Plaintiffs' memorandum in opposition to summary judgment alleges that they
purchased the motor home on July 7, 2004. (Pls. Mem. in Opp. to Mot. for Summ. J. 2, DE 66.) This discrepancy is
inconsequential for summary judgment purposes.

Warranted by subsidiaries of Fleetwood Enterprises, Inc., sold in the United States and Canada."

(Fleetwood's Br. in Supp. of Summ. J., Ex. 3 at 1, DE 64-2.) The warranty explains its coverage

in the following manner.

> Your new motor home, including the structure, plumbing, heating and electrical systems, all appliances and equipment installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship. Appearance imperfections, or damage to paint, graphics, exterior materials, or upholstery that may have occurred prior to delivery are normally corrected during the inspection process at the manufacturing plant or at the dealership.
>
> The warranty extends to the first retail purchaser and his transferee(s) and begins on the date of original retail delivery or the date the motor home is first placed into service as a rental, commercial or demonstrator unit (whichever occurs first). The warranty extends for the following periods:
>
> > 1.   For all defects (other than structural) the warranty extends for a period of one year from such date or until the unit has received 15,000 total miles of use as determined by the mileage shown on the odometer (whichever occurs first).
> >
> > 2.   For structural defects, 3 years; structural defects are limited to the following: roof structure, sub-floor structure, and Vacu-bond® walls.

(*Id.*) The limited warranty excludes from coverage:

1.   The automotive chassis system (including the chassis and drive train), tires and batteries, which are covered by the separate warranties of the respective manufacturers of these components.
2.   Defects caused by or related to:
     a.   Abuse, misuse, negligence or accident;
     b.   Failure to comply with instructions contained in the ***Owner's Information Package***;
     c.   Alteration or modification of the motor home;
     d.   Environmental conditions (salt, hail, chemicals in the atmosphere, etc.)
3.   Normal deterioration due to wear or exposure, such as fading of fiberglass, fabrics or drapes, carpet wear, etc.
4.   Normal maintenance and service items, such as light bulbs, fuses, wiper blades, lubricants, etc.
5.   Motor homes on which the odometer reading has been altered.
6    Transportation to and from dealer or Fleetwood Service Center location, loss of time, inconvenience, commercial loss, loss of use, towing charges, bus

7

fares, vehicle rental, incidental charges such as telephone calls or hotel bills, or other incidental or consequential damages.

7.    Fleetwood will NOT be responsible for any losses, damages, or claims, including, but not limited to, property damage, personal injury, loss of income, legal fees or expenses, emotional distress, death, loss of use, loss of value, all other economic loss, adverse health effects, or any other effects caused or alleged to be caused by MICROBIAL MATTER, including, but not limited to, mold, mildew, fungus or dry rot.

(*Id.* at 2.)

Fleetwood Motor Homes and Fleetwood Enterprises' statement of material facts in their brief in support of summary judgment alleges that the limited warranty was issued and supplied by Fleetwood Motor Homes and that Fleetwood Enterprises "extended no warranty at all and is, therefore not a 'warrantor.'" (Fleetwood's Br. in Supp. of Summ. J. 2–3, DE 64). The Plaintiffs do not dispute this allegation in their memorandum in opposition to the motions for summary judgment.

Freightliner issued the second warranty related to the motor home, the Freightliner Custom Chassis Corporation Owner's Warranty Information for North America. (Freightliner's Mot. for Summ. J., Ex. 2, DE 62-3.) That warranty covers the basic chassis, alliance battery, brightwork, chassis paint, corrosion, crossmembers, drivetrain, frame rails, and towing/roadside assistance. (*Id.* at 3.) Freightliner "warrants that each new vehicle will be free from defects in material and workmanship that occur under normal use within the applicable warranty period, subject to certain limitations and exclusions as specified in this document." (*Id.* at 12.) The warranty does not cover "engines, Allison transmissions, tires, or other components or parts that are not manufactured by Company and that are warranted directly by their respective manufacturers." (*Id.*) The warranty also provides that Freightliner's "sole obligation under this warranty shall be to repair or replace, at company's discretion, any defective component or part."

(*Id.*)

### C.      PLAINTIFFS' COMPLAINTS AND ATTEMPTED REPAIRS

Around July 18, 2004, the Plaintiffs noticed a vibration in the front end of the motor

home. They notified Tom Johnson Camping Center of the vibration on August 5, 2004, and they

were referred to Freightliner. Freightliner examined the motor home on August 10 at its Gaffney,

South Carolina facility and concluded that the front tires were incorrectly mounted and causing

the vibration. Freightliner then referred the Plaintiffs to Michelin, the tire manufacturer, for

correction of the tire defect. Michelin authorized Freightliner to order two new front tires and

have them shipped to Tire Centers, Inc., a Michelin tire company in Fort Lauderdale, Florida.

The tires were put on the motor home on August 19 at Tire Centers, Inc. On August 20, the

Plaintiffs returned to Tire Centers, Inc. and complained of continued vibration. Tire Centers, Inc.

rebalanced the tires. The vibration had improved in the front of the motor home, but it remained

throughout the remainder of the motor home. Michelin referred the Plaintiffs to Freightliner to

correct any further vibration.

The Plaintiffs returned to Freightliner in Gaffney, South Carolina on September 23, again

complaining of vibration throughout the motor home. Freightliner used an Electronic Vibration

Analyzer ("EVA") to inspect for vibration. The test indicated that any vibrations were within

what Freightliner believed to be the specifications for the motor home. Freightliner informed the

Plaintiffs that their complaints about the continued vibration would have to be directed to

Fleetwood. The Plaintiffs complained to Fleetwood's Decatur, Indiana facility of continued

vibration in October 2004. The motor home was delivered to Fleetwood on November 8, and

they kept it until January 26, 2005. Fleetwood inspected the motor home in November 2004 and

concluded that the tires needed to be balanced. Freightliner was not informed of this complaint.

In December 2004, after the Plaintiffs complained to Fleetwood that the chassis batteries were slow to recover their charge, Fleetwood discovered a defective cell in one of the chassis batteries. Fleetwood replaced the chassis battery at no charge to the Plaintiffs and did not notify Freightliner of the defect until after the repair was completed. The Plaintiffs complained to a Freightliner employee at Fleetwood's Decatur, Indiana facility that the motor home was difficult to start on January 18, 2005. The Freightliner employee referred the matter to Fleetwood. Fleetwood spoke with the Plaintiff in February 2005 and scheduled a March 2005 service appointment. The motor home was delivered from Florida by Don Ray's Drive-Away service to Fleetwood, and the driving service noticed that there was a vibration problem. Fleetwood concluded that the house batteries needed to be replaced at the March 2005 service appointment.

The Plaintiffs complained again to Fleetwood of vibration in the rear of the motor home and in the steering wheel in February 2005**.** The parties do not specify how, but Freightliner was informed of this complaint, and Freightliner instructed one of its independent authorized repair facilities, Stoops Freightliner and Sterling and Western Star ("Stoops") in Fort Wayne, Indiana to inspect the vehicle. A Stoops employee conducted another EVA test and was unable to detect a vibration outside what Freightliner believes to be the normal vibration level for the specifications of the Plaintiffs' motor home.

On April 20, 2005, the Plaintiffs complained again to Freightliner of vibration and loss of battery charge. In response, Freightliner instructed the Plaintiffs to take the motor home to the Atlantic Truck Center, an authorized Freightliner repair facility in Pompano, Florida. The motor home was dropped of with the Atlantic Truck Center on May 16, 2005, and picked up on May 25, 2005. Atlantic Truck Center conducted an EVA test, discovered a vibration, and concluded

10

that improperly balanced tires were causing the vibration. Atlantic Truck Center also concluded that a faulty generator switch, a Fleetwood component, was causing the battery charge problems and that the chassis batteries were in good working order. Freightliner paid for the repairs and tire balancing. After the Plaintiffs' picked up the motor home, they drove it to Kissimmee, Florida, and they observed that the motor home continued to vibrate.

The Plaintiffs describe the vibrating as strong enough that a driver's hand can be seen moving on the steering wheel and that "in addition to the bed, all of the lamps, the hanging lamps that are on the walls, they're all vibrating . . . [and] [a]nything hanging that is screwed into the paneling vibrates." (Salvatore Cimino Dep. 144–147.) The Plaintiffs have submitted the numerous repair orders from Fleetwood and Freightliner (Pls. Mem. in Opp. to Mot. for Summ. J., Ex. 4). They concede that "[m]ost repair items were accomplished," but they allege that "the electrical system and battery discharge and the heavy vibrations continued and were repeatedly complained of and addressed but not corrected." (Pls. Mem. in Opp. to Mot. for Summ. J. 3, DE 66.) The Plaintiffs designate the testimony of John Mestlin, a warranty specialist for Fleetwood, that he cannot determine whether the inability to start the motor home is the result of a Fleetwood or Freightliner problem. They designate the testimony of John Claterbos, Freightliner's warranty specialist, to the same effect. The Plaintiffs' also designate the Rule 26(a)(2) expert disclosure of Kevin Mallory, Fleetwood's Lead Electrical Drafter, which includes an observation that the motor home failed to start on inspection and that Mr. Mallory believed this was because the chassis batteries had gone bad.

## MOTIONS TO STRIKE

**A.     Plaintiffs' Exhibit 7 – Don-Ray Drive-A-Way Driver's Report**

11

The Plaintiffs have submitted Exhibit 7 in their appendix to their memorandum in opposition to the motions for summary judgment. Exhibit 7 is a group of eight documents that the Plaintiffs claim were composed by Mestlin and employees of Don-Ray Drive-A-Way, the service that transported the motor home from Florida to Fleetwood's Indiana facility in March 2005. The documents note several observations about the Plaintiffs' motor home.

The first document is signed by Kyle Legg, the Don-Ray employee who drove the motor home from Florida to Indiana. It also contains two other illegible signatures. The document indicates that it is form number 1, and there is a Bates stamp numbering it 930. The document notes, among other things, the vehicle's mileage, customer contact information, and the starting fluid levels. There is an instruction printed on the form that the original is to be given to John Mestlin and a copy to Don-Ray.

The second document appears to be a diagram of the motor home's interior. That document has a handwritten comment noting a spot with missing paint. It indicates that it is for the same serial number as document 1. No original pagination is apparent, but there is a Bates stamp numbering the document 931.

The third document is a checklist with notations indicating the condition of the exterior and interior of the motor home. For example, the document notes that the rubber on the roof is in good condition while the fiberglass on the roof has paint missing. The document indicates that it is related to the same serial number and customer as the previous documents. It also indicates it is form number 2. It has a Bates stamp of 934.

The fourth document contains 4 drawings of the motor home depicting different angles. The document indicates that the diagrams are of a 2004 American Eagle Coach, specifically unit number 44-88138. The document notes various defects around the motor home, particularly

paint chips and windshield chips. No original page number is visible, but there is a Bates stamp number 933.

The fifth document is a comment sheet. The comment sheet indicates that it is for serial number 719V44488138, and for customer Salvatore Cimino, the same serial number and customer listed on the first document, the check-in sheet. The comment sheet lists 8 handwritten notations remarking on various imperfections throughout the motor home. The comment that the parties are particularly concerned with is comment number 8, noting "vibration in steering wheel [and] seat while driving between 64 mph to 68 mph." The document indicates that it is form 3. There are two different Bates stamps, one marking this as 0785 and another as 0821.

The sixth document is another comment sheet, again indicating that it is related to serial number 719V44488138 and customer Salvatore Cimino. This comment sheet notes 17 different imperfections. The document indicates that it is form 3. Again, there are two different Bates stamps, one marking the document as 0775 and another as 0822.

The seventh document lists the same serial number and customer, and it notes 21 items that need to be fixed. The document indicates that it is form 3. The Bates stamps mark it as 0781 and 0823.

The eighth document is a continuation of the previous document, and it indicates 11 more items in need of repair. Again, the document indicates it is form 3. The two Bates stamps mark it as 0782 and 0824.

1.      *Objection One – Lack of Proper Foundation*

Freightliner argues that all of the documents contained in Exhibit 7 are inadmissible because the Plaintiffs have failed to lay a proper foundation under Federal Rule of Evidence

901(a). Freightliner argues that "it is unclear whether or not the eight documents which comprise Plaintiffs' Exhibit 7 were created contemporaneously by the same author or whether they have been assembled by the Plaintiffs." (Mot. to Strike 1, DE 69.) Freightliner points to different handwriting throughout the documents, inconsistent numbering on the pages, and a lack of specificity as to who authored each of the individual pages. Fleetwood Motor Homes and Fleetwood Enterprises do not raise the authentication objection, and they describe Exhibit 7 as "a driver's report prepared by Don Ray's Drive-A-Way service," which is consistent with the Plaintiffs' description. (Mot. to Bar Evid. 1, DE 73.)

The Plaintiffs respond that "Cimino claims the document, which was provided to Plaintiff as part of a discovery request, was a record generated by Fleetwood after a driving service drove the motorhome to the Fleetwood facility in Indiana. Indeed, the document in question has been authenticated and identified by Fleetwood's own expert, Mr. John Mestlin." (Pls. Resp. to Mot. to Strike 2, DE 74.) As for the inconsistent numbering, the Plaintiffs argue that "[s]triking of this evidence because Plaintiff and Defendant have different and not necessarily contiguous numbering systems for each of the pages of the document is far from appropriate when the documents have indeed been produced by Defendant Fleetwood and authenticated by the person who generates the form for internal recordkeeping purposes." (*Id.* at 2–3.) The Plaintiffs support these arguments by designating Mestlin's deposition testimony. As for the inconsistent handwriting, the Plaintiffs argue that there is nothing improper about multiple people filling out the forms.

Freightliner replies to the Plaintiffs' arguments by emphasizing that while these are purportedly forms completed by Legg, the Plaintiffs have not offered the testimony of Legg in identifying the report. Freightliner also contends that far from authenticating Exhibit 7, Mestlin's

14

deposition testimony further illustrates that the documents that the Plaintiffs have submitted have not yet been authenticated through a proper means.

In his deposition, Mestlin, a Fleetwood Employee, testified that when Fleetwood employs Don-Ray's service, on some occasions, including the trip that is the subject of this dispute, Fleetwood generates paperwork that they give to Don-Ray to fill out. (Mestlin Dep., Resp. in Opp. to Mot. to Strike, Ex. 1 at 1, DE 74-2). He testified that he personally generated the form marked 932 specifically for the Plaintiffs' motor home. The form identified as 932 in the deposition is the comment sheet that notes "vibration in steering wheel [and] seat while driving between 64 mph and 68 mph." (Mestlin Dep., Ex. 6.) It is the same form that is the fifth document in the motion Exhibit 7 and Bates stamped 0785 and 0821. There was a great deal of confusion in the deposition as to the pagination of the forms and to the total number of pages. The Bates numbering on the documents in the motion Exhibit 7 is also different from the Bates numbering on those same documents referred to in the deposition as Exhibit 6. Nonetheless, Mestlin established that the forms that comprise motion Exhibit 7 were generated and maintained by the Fleetwood Defendants, and they were completed by Don-Ray employees.

Federal Rule of Evidence 901(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Testimony of a witness with knowledge that a matter is what it is claimed to be conforms with the requirements of 901(a). Fed. R. Evid. 901(b).

The Plaintiffs claim that Exhibit 7 is a collection of forms generated by Fleetwood after a driving service drove the motor home from Florida to the Fleetwood facility in Indiana. Mestlin's deposition testimony confirms this, particularly, and most importantly, with regard to

15

the form that notes Legg's observation that the motor home vibrates between 64 and 68 miles per hour. Mestlin testified that he generated the forms, that he required Don-Ray's service to complete the forms, and the forms themselves note that the originals are to be delivered to Mestlin. The Court finds that Exhibit 7 has been sufficiently authenticated through Mestlin's deposition testimony, and Freightliner's objection as to inadequate foundation is overruled.

### 2.    *Objection Two – Hearsay*

All Defendants move to strike what Freightliner refers to as "Comment 8," the comment in the Plaintiffs' motion Exhibit 7 that the Don-Ray driver experienced "vibration in steering wheel [and] seat while driving between 64 mph to 68 mph." The Defendants all argue that this statement is hearsay under Federal Rule of Evidence 801 and is inadmissible under Rule 802. The Plaintiffs respond that Comment 8 is a record of regularly conducted activity and is an exception to the rule excluding hearsay. Fed. R. Evid. 803(6).

The Plaintiffs do not seem to dispute that the proffered statement constitutes hearsay. The statement is a written assertion made by an out-of-court declarant offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a)–(c). Rule 802 prohibits hearsay evidence unless the evidence falls under one of the hearsay exceptions. The only issue the parties dispute is whether the Plaintiffs have met the foundational requirements of the records of regularly conducted activity exception, Fed. R. Evid. 803(6). That rule provides that an admissible record of regularly conducted activity is:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the

testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6).

The Plaintiffs have adequately established the 803(6) foundational elements. Comment 8 is part of a report of the motor home's condition. Mestlin's deposition testimony, which is at the center of this evidentiary dispute, establishes that Fleetwood routinely requires these reports to be completed when a motor home is transported to them by Don-Ray's service. Fleetwood creates the forms for the reports, requires Don-Ray's employees to complete them, and Fleetwood maintains them. The form indicates that it is to be returned to Mestlin. As the creator of the forms, and custodian of the reports, Mestlin is a competent witness to establish these evidentiary foundations. The Court finds that the Plaintiffs have made the necessary 803(6) showings, and the Defendants' hearsay objections to Comment 8 are overruled.

While the statement falls under the 803(6) hearsay exception, it does not even constitute hearsay when offered against the Fleetwood Defendants. Rule 801(d)(2) provides that a statement offered against a party is not hearsay if the statement is made by a person authorized by the party to make a statement concerning the subject. Fed. R. Evid. 801(d)(2)(C). According to Mestlin's deposition testimony, not only was Legg authorized to make the proffered statements, he was required to comment on the subject. Because the statement is not hearsay under Rule 801(d)(2)(C) when offered against the Fleetwood Defendants, their objections to Comment 8 must be overruled.

17

Rule 801(d)(2)(D) also provides that a statement offered against a party is not hearsay if the statement is made by the party's agent or servant concerning a matter within the scope of the agency or employment. The Plaintiffs assert that this provision applies to Comment 8. Because the parties do not thoroughly discuss the nature of the potential agency relationship between Don-Ray's service and the Fleetwood companies, and because there are adequate alternative grounds for overruling Fleetwood Motor Homes and Fleetwood Enterprises' hearsay objections to Comment 8, the Court will not address whether Rule 801(d)(2)(D) applies to Comment 8.

**B.      Freightliner Technician's Statement**

In their memorandum in opposition to the summary judgment motions, the Plaintiffs refer to an unnamed Freightliner service technician's statement that it appeared that Fleetwood "may have put the box on wrong." (Pls. Mem. in Opp. to Mot. for Summ. J. 12, DE 66.) The Fleetwood Defendants move to strike this statement as hearsay. They argue that it is an oral assertion made by an out-of-court declarant offered to prove the truth of the matter asserted. The Fleetwood Defendants also contend that a Freightliner technician is not an employee of either Fleetwood entity, and the technician's statement is therefore not the admission of a party-opponent.

The Plaintiffs respond that this statement is the admission of a party opponent because "Fleetwood sent the motorhome to Freightliner whose technician reported a problem within the scope of authority." (Pls. Resp. to Mot. to Bar Evid. 4, DE 76). As such, the Plaintiffs argue, the statement is admissible as "a statement by a person authorized by the party to make a statement concerning the subject," Fed. R. Evid. 801(d)(2)(C), or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the

existence of the relationship," Fed. R. Evid. 801(d)(2)(D). The Plaintiffs have failed to establish a proper foundation that the statement is nonhearsay under 801(d)(2)(C) or 801(d)(2)(D).

The Plaintiffs' memorandum in opposition to the motions for summary judgment indicates that Michelin referred the Plaintiffs to Freightliner on this particular occasion, not one of the Fleetwood Defendants. (Pls. Mem. in Opp. to Mot. for Summ. J. 12, DE 66) ("Michelin put on two new front tires yet the problem persisted and CIMINO complained to Michelin. Michelin sent him . . . back to FREIGHTLINER to correct the problems.") At least for this occasion, the Plaintiffs have failed to establish that the service technician was authorized by the Fleetwood Defendants to make the statement or that the technician was one of their agents or servants. Even if the technician was an agent or servant, the Plaintiffs have failed to establish the scope of the agency or employment relationship.

The Plaintiffs argue in the alternative that the statement is not offered to prove the truth of the matter asserted, but instead it is offered "for the purpose of imputing knowledge on Fleetwood." (Pls. Resp. to Mot. to Bar Evid. 4, DE 76.) The Plaintiffs do not explain how a Freightliner technician's statement to one of the Plaintiffs imputes knowledge to one of the Fleetwood Defendants. The Plaintiffs have not established, or even suggested, that the technician communicated his observation that the box was incorrectly assembled to the Fleetwood Defendants.

The Freightliner technician's statement, when offered against the Fleetwood Defendants, is an oral assertion made by an out-of-court declarant offered to prove the truth of the matter asserted. Fed. R. Evid. 801 (a)–(c). The statement is not the admission of a party opponent, Fed. R. Evid. 801(d), and it does not qualify as one of the hearsay exceptions, Fed. R. Evid. 803, 804.

It is therefore inadmissible, Fed. R. Evid. 802, and the Fleetwood Defendants' objection is sustained.

## MAGNUSON-MOSS WARRANTY ACT CLAIMS

The Plaintiffs have sued Freightliner and the Fleetwood Defendants for the return of the purchase price of their motor home, paid finance charges, and reasonable attorney's fees as a result of "serious problems with the electrical system and also . . . heavy vibrations throughout the motor home." (Pls. Mem. in Opp. to Mot. for Summ. J. 1, 2, DE 66.) The Plaintiffs contend that Freightliner's and Fleetwood's failure or inability to repair these problems, combined with their unwillingness to refund the purchase price, violates the MMWA, 15 U.S.C. §§ 2301–2312.

The MMWA is "a remedial statute designed to protect the purchases of consumer goods from deceptive warranty practices." *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001) (citing *Skelton v. Gen. Motors Corp.*, 660 F.2d 311 (7th Cir. 1981)). "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1). In order to prevail on a claim under the MMWA, the Plaintiffs have the burden of establishing, by a preponderance of the evidence, five elements: (1) the Plaintiffs complied with the terms of the warranty; (2) the motor home contained a defect covered by the warranty; (3) the Defendants were given a reasonable opportunity to perform the necessary repairs; (4) the Defendants were unable to repair the defect within a reasonable time or after a reasonable number of attempts; and

(5) the Plaintiffs have suffered damage.[4]

The Defendants' motions for summary judgment do not argue that the Plaintiffs have failed to comply with the terms of the warranty.[5] The Court's analysis therefore focuses on the remaining elements.

## A.      Defects Covered by Warranty

In this case, the defect covered by warranty element must be divided into two sub-elements: (1) whether there is a defect, and (2) if there is a defect, whether the defect is related to a warranted part. As for the vibration, Freightliner argues that there is no evidence of a defect at all. If there is a defect causing vibration, all the Defendants contend that there is insufficient evidence connecting the vibration to a part that they warrant. As for the electrical problems, Freightliner and Fleetwood do not dispute that the problems exist, but the Defendants deny that there is any evidence establishing that the defects are caused by a part that the respective Defendants warrant.

_____

[4]  *See, e.g.*, *Evans v. Gen. Motors Corp.*, 459 F. Supp. 2d 407, 413 (D. Md. 2006) ("To prevail on a Magnuson-Moss Warranty Act claim, the plaintiff must establish that: (1) his vehicle has a defect in parts or workmanship, (2) the defendant warrantor was not able to remedy the defect in a reasonable amount of time, and (3) he suffered economic harm as a result.") (brackets omitted)); *Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp. 2d 737, 743 (N.D. Ohio 2005) ("A plaintiff must show: (1) that the goods are subject to a warranty and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; (3) and that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts.") (quotation marks omitted)); *Portillo v. Georgie Boy Mfg., LLC*, No. 04 C 1537, 2005 WL 2787211, at *2 (N.D. Ill. Oct. 26, 2005) ("These claims must contain four elements: the motor home contained a defect covered by the warranty; [the plaintiff] complied with the warranty's terms; Defendants had a reasonable opportunity to perform the necessary repairs; and Defendants were unable to repair the defect within a reasonable time or after a reasonable number of attempts.").

[5]  To be precise, Defendant Fleetwood Enterprises contends that it did not warrant the motor home. As will be explained in greater detail later, because the Plaintiffs did not contest this factual dispute in a statement of genuine issues, Defendant Fleetwood Enterprises will be dismissed from the case. However, Fleetwood Motor Homes and Freightliner do not contest that they warranted parts of the Plaintiffs' motor home.

1.      *Defect*

Freightliner contends that "[t]here is no evidence proving that an unrepaired chassis vibration defect exists." (Freightliner's Mem. in Supp. of Summ. J. 9, DE 61.) Freightliner relies primarily on the EVA testing to argue that there is no vibration problem, asserting that any vibration that exists measures less than an .075 EVA reading. Freightliner also points out that the "Plaintiff offers no EVA readings, which exceed the specifications for the Motor Coach and no expert testimony or report confirming the existence of an unrepaired vibration problem." (*Id.* at 11–12.)

The Plaintiffs respond that "having owned five (5) motor homes, [they] are capable of understanding that [their] motor home . . . vibrates." (Pls. Mem. in Opp. to Summ. J. 6, DE 66.) They further point to the numerous complaints that they have made to Fleetwood, Freightliner, and their authorized service stations, as well as the many attempts to remedy the vibration, as evidence of a vibration problem. The Plaintiffs also designate their own testimony that the motor home continues to vibrate as well as the observation of the Don-Ray's driver who drove the motor home from Florida to Indiana for repair in March 2005. Atlantic Truck Center also recorded excessive vibration in May 2005, although it attributed the vibration to improperly balanced tires.

Freightliner has failed to establish that any vibration that does not record a .075 EVA reading does not constitute a motor home defect. The motion for summary judgment does not designate any evidence establishing that this is the industry standard. The Plaintiffs claim that the motor home fixtures shake excessively when the home is being driven at highway speeds. Freightliner has not demonstrated that it would be unreasonable for a jury that believes the Plaintiffs' testimony to conclude that this level of vibration constitutes a defect. Freightliner's

position is further weakened, at the summary judgment stage, by the fact that several of the

Plaintiffs' complaints of vibration have been confirmed by several of the technicians and

mechanics who have worked on the motor home in response to those complaints.

Viewing the facts in a light must favorable to the Plaintiffs, a reasonable jury could rely

on the Plaintiffs' descriptions of the motor home's vibration, as well as the numerous

observations of vibration by the various mechanics and technicians who have worked on the

motor home, to conclude that a vibration defect persists. The Court is therefore unable to find

that, as a matter of law, no reasonable jury could find that a vibration defect exists.

The Plaintiffs have also designated evidence that, if believed by a reasonable jury, would

establish that the motor home has electrical problems.[6] None of the Defendants have contested

that the Plaintiffs have met their burden at the summary judgment stage of establishing that the

motor home has electrical problems. The only remaining issue regarding this element then is

whether a reasonable jury could find that the vibration and electrical problems are caused by a

part or parts warranted by the Defendants.

---

[6] The Plaintiffs designate the deposition testimony of John Mestlin, Fleetwood's Dispute Resolution Administrator, Christopher Fields, Fleetwood's servicing technician, and Kevin Mallory, Fleetwood's expert.

> Q.      Mr. Mestlin, when you got in the motor home to drive it with Mr. Mallory (Fleetwood's designated expert) [*sic*]; correct?
> A.      Yes, sir.
> Q.      The cranking batteries were in fact incapable of starting the motor home; correct?
> A.      That, [*sic*] correct.

(Pls. Mem. in Opp. to Mot. for Summ. J. 9, DE 66.)

> Q.      [Mr. Fields,] [y]ou did not perform any tests to determine why the chassis battery went down overnight; correct?
> A.      No.

(Pls. Mem. in Opp. to Mot. for Summ. J. 11, DE 66.) Finally, Mallory stated: "[w]e then tried to start the unit while I measured the chassis battery voltage. During cranking time, the chassis batteries measured 7.5 volts and the engine did not start." (*Id.*)

**2.**      *Causation*

Even if the motor home has vibration and electrical problems, Fleetwood and Freightliner both argue that the Plaintiffs cannot connect those problems with a part that the respective Defendants warrant. This issue primarily comes down to which party has the burden of establishing the cause of the defect. Freightliner has concluded that the vibration and electrical problems are not caused by any part that they warrant. Fleetwood has concluded the same. Neither Defendant has determined what parts are causing the problems. The Plaintiff argues that the numerous tire repairs have not alleviated the vibration, so a reasonable jury could conclude that the vibration is caused by one of the Defendants' warranted parts and not the tires. Furthermore, the Plaintiffs argue that the Defendants' finger pointing at each other with respect to the electrical problems is not sufficient for the Defendants to prevail on summary judgment.

The Defendants all rely heavily on *Advantage Engineering, Inc. v. Burks Pumps, Inc.*, 28 F.3d 1216 (7th Cir. 1994) (unpublished table opinion), to argue that the Plaintiffs have the burden of establishing causation. *Advantage Engineering* is an unpublished opinion affirming the district court's decision to grant summary judgment for the defendant in that case. Before examining the case, it is important to note that unpublished decisions of the Seventh Circuit have no weight as precedent. *See Anderson v. Romeo*, 72 F. 3d 518, 525 (7th Cir. 1995) ("[A]n unpublished decision cannot elevate the decision that it affirms to the status of circuit precedent.").

The plaintiff in *Advantage Engineering* was "in the business of manufacturing, designing and selling equipment for use in the plastics industry." *Advantage Eng'g*, 1994 WL 317126, at *1. The defendant "was in the business of designing, manufacturing, and selling certain types of pumps for various industrial applications. For many years, . . . [the plaintiff] purchased from . . .

24

[the defendant] various types of pumps, which . . . [the plaintiff] installed as component parts in the equipment it manufactured." *Id.* A third party ordered equipment from the plaintiff, and the plaintiff incorporated the defendant's pump into the equipment. The equipment leaked, and the plaintiff sued the defendant for breaching the limited warranty. The Defendants have placed particular emphasis on the district court's discussion of causation.

> Where the evidence shows that there are several possible causes of a loss other than the alleged breach of warranty and that the defendant was not responsible for the other possible causes, and where the evidence shows that it is just as reasonable and probable that the injury was not the result of the alleged breach of warranty so that the fact finder could do no more than guess at whether the breach was the cause of the loss, as a matter of law, there can be no recovery against the defendant.

*Id.* at 10. This passage, however, does not resolve the issue in this case.

Viewing the evidence in a light most favorable to the Plaintiffs, and drawing all reasonable inferences in favor of the Plaintiffs, the evidence does not show that it is just as reasonable and probable that the injury was not the result of the alleged breach of warranty. As for the vibration, a reasonable jury could conclude that the numerous unsuccessful attempts to resolve the problem by focusing on the tires demonstrate that the tires are not the problem. A jury could also reasonably conclude that the other sources of vibration that the Defendants point to, such as the stereo system or the road surfaces, would likely have been controlled for in the EVA testing.

The Defendants finger pointing does not necessarily mean that a reasonable jury must let them all off the hook either. If a jury believes the Plaintiffs' testimony and Freightliner's insistence that the chassis is not causing the vibration, then a reasonable jury could conclude that a Fleetwood warranted part is likely causing the problem. If a jury believes the Plaintiffs' testimony and Fleetwood's insistence that a Fleetwood

warranted part is not responsible for the vibration, then a reasonable jury could conclude that the chassis is more likely than not causing the problem.

The Plaintiffs have designated evidence that, if believed by a jury, establishes that all the Defendants have recognized the electrical problems, but they have failed to ensure that the problems are not being caused by their respective warranted parts. (Pls. Mem. in Opp. to Mot. for Summ. J. 7–12, DE 66.) While no Defendant concedes that one of their warranted parts is causing the electrical problems, they also do not deny that the problems could be caused by a part or parts that they warrant. Similar to the finger pointing problem with the vibration, a reasonable jury could believe one of the Defendants and conclude that the other Defendant's warranted part is the cause of the problem. Even under *Advantage Engineering*, the Plaintiffs have demonstrated that the cause of the vibration and electrical problems are genuine issues of fact that preclude summary judgment.

Furthermore, this Court agrees with the reasoning of those courts that have determined that in cases such as this one, the burden is on the Defendants to prove that their warranted parts are not the cause of the defects.

> In light of the technological complexity of most automobiles currently on the market, forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons the Magnuson-Moss Warranty Act was meant to aid. . . . One of Congress's express purposes in enacting the MMWA was "to make warranties on consumer products more readily understood and enforceable." H.R. Rep. No. 93-1107 (1974). Indeed, Congress was concerned about the inability of consumers to have their products repaired. H.R. Rep. No. 93-1107 (1974). For the Court to then require a plaintiff bringing such an action to prove not only that a defect exists but also its exact, technical cause would thwart the intent of Congress. Warrantors, rather than consumers, are in the better position to diagnose the sources of problems complained of by consumers. Once a consumer has alerted the warrantor to the defect, the warrantor who wishes to avoid the repair or replacement cost must establish that the alleged defect is not caused by something

covered by the issued warranty. To hold otherwise would place too great a burden on consumers owning defective, yet warranted, products and would render the warranties virtually useless.

*Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1331–32 (N.D. Ga. 2004) (quotation marks and brackets omitted). The Defendants have failed to show that the defects are not caused by parts that they warrant. Because there are genuine issues of material fact as to the cause of the defects, the Defendants' motions must be denied in part.

**B.     Opportunity to Perform Necessary Repairs**

Fleetwood claims that they were never afforded the opportunity to repair the allegedly defective electric rear sunshade, bathroom vent, air dams on the front door, and antenna. The Plaintiffs memorandum in opposition to the motions for summary judgment does not dispute this claim. Accordingly, Fleetwood's motion for summary judgment must be granted with respect to any claims related to a defective electric rear sunshade, bathroom vent, air dams on the front door, and an antenna. The Plaintiffs have met their burden with respect to the vibration and remaining electrical problems. Construing the facts in a light most favorable to the Plaintiffs, and making all reasonable inferences in their favor, a reasonable jury could conclude that the motor home was presented to the Defendants multiple times with several opportunities to repair the vehicle.

**C.     Inability to Repair Defect**

As has been previously discussed, the Plaintiffs have designated a great deal of admissible evidence that, if accepted by a reasonable jury, establishes that vibration and electrical problems with the motor home persist. The Plaintiffs have designated evidence

27

indicating that the Defendants have had multiple opportunities to repair these problems. Because the problems continue, the Plaintiffs have carried their burden of demonstrating the Defendants' inability to repair the defects.

**D.     Damage to the Plaintiffs**

The Plaintiffs' amended complaint seeks an award of the return of the motor home's purchase price. (Second Am. Compl. 3, DE 45.) The MMWA only awards a refund of the purchase price for the breach of a full warranty. *See* 15 U.S.C. § 2304; *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) ("Section 2304 of the Act imposes minimum federal warranty standards for 'full warranties' and provides remedies for their breach, including . . . a full refund of the purchase price . . . .")). As for limited warranties, state law provides the applicable measure of damages. *Schimmer*, 384 F.3d at 405 (citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998)). The parties do not dispute that the warranties at issue in this case are limited warranties or that Indiana law governs the issue of damages.

Because the Plaintiffs accepted the motor home, Ind. Code § 26-1-2-714 provides available remedies for a breach of the limited warranties. That section provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Ind. Code § 26-1-2-714(2). The three alternative methods for determining damages under this section are the cost of repair, the fair market value of the goods as warranted less the salvage value of the goods, and the fair market value of the goods as warranted at the time of acceptance less the

fair market value of the goods as received at the time of acceptance. *See Michiana Mack, Inc. v. Allendale Rural Fire Prot. Dist.*, 428 N.E.2d 1367, 1370 (Ind. Ct. App. 1981). There also may be occasional cases where the measure of damages for the breach of a limited warranty under this section is the purchase price, *id.* at 1371 (citing *W&W Livestock Enters., Inc. v. Dennler*, 179 N.W.2d 484 (Iowa 1970) (pigs delivered so infected with disease as to be worthless)), although that would not be the case here because the motor home would have at least scrap value, *see Ertel v. Radio Corp. of Am.*, 354 N.E.2d 783, 783–786 (Ind. App. 1976).

While Ind. Code § 26-1-2-719(1)(a) allows buyers and sellers to limit the remedy for a breach of warranty, "[l]imitations of remedy are not favored in Indiana and are strictly construed against the seller on the basis of public policy." *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004) (citing *Martin v. Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1085 (Ind. 1993)). "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in IC 26-1." Ind. Code § 26-1-2-719(2).

The *Perry* court quoted *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1085 (Ind. 1993), in explaining the analysis for determining whether a limited remedy has failed of its essential purpose as follows.

> Commentators have suggested that § 2-719, as it relates to failure of essential purpose, is not concerned with arrangements which were oppressive at the inception which is a question of unconscionability, but with the application of an agreement to "novel circumstances not contemplated by the parties." In addition, they have suggested that this provision should be triggered when the remedy fails of its essential purpose, not the essential purpose of the UCC, contract law, or of equity. One author suggests that the method used to decide whether a particular limitation fails of its essential purpose is to identify the purpose underling the provision and determine whether application of the remedy in the particular circumstances will further that purpose. If not, then, and only then, is there a failure of essential purpose. *Thus, for example, where the sale of a car was accompanied by the exclusive remedy of repair and replacement of defective parts but attempted repairs were ineffective in correcting the problems, the purchaser was entitled to recover an amount in*

29

> *excess of the cost of repairs. The exclusive remedy of repair and replacement of defective parts failed of its essential purpose because the car could not be repaired so as to operate free of defects as promised in the express warranty.*

*Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1085 (Ind. 1993), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005), quoted in *Perry*, 814 N.E.2d at 643 (emphasis in original, footnote and citations omitted). The *Perry* court was evaluating a case similar to the instant case. Purchasers of a motor home complained repeatedly of defects, and after several attempts at repair by the warranting party, the defects remained. The defendant had issued a warranty that limited the remedy to repair and replacement of defective parts. The court concluded that:

> This disputed evidence regarding a defect in the materials and/or workmanship in the construction of the vehicle and its original components demonstrates that, similar to the car illustration in *Martin Rispens & Son*, here, there is at least a genuine issue of material fact as to whether . . . [the defendant's] exclusive remedy of repair and replacement of defective parts or components fails of its essential purpose such that the . . . [plaintiffs] may seek other remedies provided by Indiana Code 26-1.

*Perry*, 814 N.E.2d at 644 (quotation marks omitted).

As in *Perry*, the Plaintiffs in this case have designated admissible evidence that, if believed by a reasonable jury, could establish that they complained repeatedly of defects to the warranting parties and that the defects remained after multiple attempts at repair. If a jury viewed this evidence in a light most favorable to the Plaintiffs, the jury could find that the limited remedies failed of their essential purpose and the remedies for a full warranty would be available. As such, there is a genuine issue of material fact as to whether the limited remedies failed of their essential purpose.

Even if the limited remedies have not failed of their essential purpose, the Plaintiffs are still entitled to the difference at the time and place of acceptance between

30

the value of the goods accepted and the value they would have had if they had been as warranted. Ind. Code § 26-1-2-714(2). The Defendants argue that the Plaintiffs have not designated sufficient evidence to determine the exact value of the motor home at the time of acceptance, the motor home's current value, and the amount of depreciation. However, the Plaintiffs have designated evidence that, if relied upon by a reasonable jury, establishes that the Plaintiffs have suffered economic damage.[7] While more evidence will be needed at trial in order for the jury to determine the exact amount of damage, the Plaintiffs have met the burden of demonstrating damage at the summary judgment stage.

### E.    Miscellaneous Issues

Fleetwood's reply brief raises several issues related to the manner in which summary judgment has been briefed. Fleetwood points out that the Plaintiffs do not dispute most of the facts in Fleetwood's supporting brief. The Court has accordingly accepted the undisputed facts as true. One consequence of this is that Fleetwood Enterprises will be dismissed from the case. Fleetwood points out that the Plaintiffs have made some statements of law without supporting citations, and both Defendants emphasize that the Plaintiffs have relied on an overruled case in support of its damages argument. The Court agrees that the unsupported statements of law and overturned case are not helpful, but despite these defects, there remain genuine issues of material fact in this case that must be resolved by a jury.

---

[7] It is worth noting that Fleetwood has submitted an exhibit into the record in furtherance of its argument that the plaintiffs paid "$374,000 for the allegedly defective vehicle . . . [and] [a]ccording to the National Automobile Dealer's Association website, the fair market value for plaintiffs' vehicle is approximately $215,920–$260,200." (Submission in Supp. of Fed. Juris. 2, DE 36.) Fleetwood notes that "[a]s a result, the difference between the purchase price and the value of the allegedly defective vehicle is approximately $113,800–$158,080." (*Id.*)

More importantly, Fleetwood points out that the Plaintiffs have not contested that the electric rear sunshade, bathroom vent, air dams on the front door, jacks, and antenna were not presented to Fleetwood for repair, that the Plaintiffs only presented a complaint with the Aqua Hot System once during the warranty period, and that Fleetwood Enterprises, Inc. did not provide a warranty to the Plaintiffs.[8] Because the Plaintiffs have not contested these issues, Fleetwood's motion for summary judgment must be granted with respect to these claims. As for

---

[8]  There are three defendants in this case, Fleetwood Enterprises, Fleetwood Motor Homes, and Freightliner. All throughout this litigation, Fleetwood Enterprises has maintained that it is an improper party to this lawsuit. (Def.'s Notice of Removal 1, DE 2) ("The Petitioner/Defendant, Fleetwood Motor Homes of Indiana, Inc., erroneously sued as Fleetwood Enterprises, Inc. [hereinafter referred to as Fleetwood] removes this action from the Circuit Court . . . ."); (Mot. to Dismiss 1, FLSD DE 2) ("Plaintiffs sued Fleetwood Enterprises, Inc., instead of what would have been the correct Defendant, 'Fleetwood Motor Homes of Indiana, Inc.'"); (Def. Resp. to Pls. Mot. to Join Party 1, FLSD DE 7) ("Thus, Defendant submits that 'Fleetwood Enterprises, Inc.' should be dismissed from this action, and that Plaintiffs pursue 'Fleetwood Motor Homes of Indiana, Inc.' as the *sole* Defendant herein . . . ."); (Second Mot. to Dismiss 2, DE 13) ("It is undisputed, pursuant to 'Exhibit A' of plaintiffs' complaint that Fleetwood Enterprises, Inc. was not a warrantor of plaintiffs' motor home.")

The Plaintiffs' filings have not been consistent or clear in explaining  whether they believe Fleetwood Enterprises is a proper party to the suit. In response to Fleetwood Enterprises' first motion to dismiss, the Plaintiffs argued that since they "filed their Motion to Join Party to include the appropriate Defendant, Fleetwood Motor Homes of Indiana, Inc." the motion to dismiss was "moot." (Pls. Resp. to Def. Mot. to Dismiss 1, FLSD DE 6.) The motion to dismiss would only be moot if the Plaintiffs were conceding that Fleetwood Enterprises was not a proper party. The District Court for the Southern District of Florida recognized that "it is not clear that the plaintiffs consent to the dismissal of the original defendant." (Order Den. Mot. to Dismiss 2, DE 3.) That court also recognized that "the Limited Warranty itself is not explicit on which subsidiary of Fleetwood Enterprises issued the Limited Warranty." (*Id.*) As such, the court denied the motion to dismiss "without prejudice, with leave to renew before the transferee court."

Fleetwood Enterprises again filed a motion to dismiss before this Court (DE 13), but because it did not renew the motion subsequent to the filing of the Plaintiffs' amended complaint, the Court denied the motion as moot (DE 59). In their response to that motion to dismiss, however, the Plaintiffs contended that Fleetwood Enterprises' argument that it was an improper party "is a factual dispute subject to discovery." (Pls. Resp. to Mot. to Dismiss 2, DE 15.) Discovery has now closed, and the Plaintiffs do not designate any evidence in support of a claim that Fleetwood Enterprises warranted the motor home, nor do they present any legal arguments supporting such a claim. Consistent with this omission, the Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment (DE 66) states that it is in opposition to "Defendants, FLEETWOOD MOTOR HOMES OF INDIANA, INC. ('FLEETWOOD') and FREIGHTLINER LLC's ('FREIGHTLINER') Motions [for] Summary Judgment." No mention is made of Defendant Fleetwood Enterprises.

Because the Plaintiffs have failed to designate any evidence disputing Fleetwood Enterprises' contention that they are not a warrantor, because the Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment does mention Fleetwood Enterprises at all, and because the Plaintiffs have not otherwise responded to Defendant Fleetwood Enterprises' Motion for Summary Judgment, Fleetwood Enterprises' motion for summary must be granted and Fleetwood Enterprises' must be dismissed from the case.

the remainder of the claims that Fleetwood addresses, the Plaintiffs have sufficiently raised genuine issues of material fact to preclude summary judgment.

## CONCLUSION

The Court emphasizes that the factual claims at this stage have been viewed in a light most favorable to the Plaintiffs, and the Court has drawn all inferences in the Plaintiffs' favor. The Court has not made any determination as to which parties' allegations are more likely true. As such, the Plaintiffs have designated enough admissible evidence to create genuine issues of material fact as to whether vibration and electrical problems persist in their motor home, whether the alleged defects, if they exist, are caused by Fleetwood or Freightliner parts, and what, if any, economic damages the Plaintiffs have suffered.

## ORDER

For the foregoing reasons, Freightliner Custom Chassis Corporation's Motion to Strike [DE 69] is DENIED. Fleetwood Motor Homes of Indiana, Inc. and Fleetwood Enterprises, Inc.'s motion to bar evidence [DE 73] is GRANTED IN PART and DENIED IN PART. The motion is granted as to the statement from the unnamed Freightliner technician. The motion is denied as to the Don Ray's Drive-A-Way driver's report.

Freightliner Custom Chassis Corporation's motion for summary judgment [DE 60] is DENIED. Fleetwood Motor Homes of Indiana, Inc. and Fleetwood Enterprises, Inc.'s motion for summary judgment is [DE 63] GRANTED IN PART and DENIED IN PART. Summary judgment is granted as to all claims against Fleetwood Enterprises, Inc. Judgment will be entered in favor of Fleetwood Enterprises, Inc. and against the Plaintiffs. Summary judgment is granted

in favor of Fleetwood Motor Homes of Indiana, Inc.'s as to the claims pertaining to the electric

rear sunshade, bathroom vent, air dams on the front door, jacks, antenna, and Aqua Hot System.

SO ORDERED on February 15, 2008.


 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

34